UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES OF AMERICA,

                                            MEMORANDUM & ORDER

      v.                                        05-CR-838 (NGG)

HERIBERTO TORRES,

           Defendant.
----------------------------------------------------------X

GARAUFIS, United States District Judge.

Defendant Heriberto Torres ("Defendant" or "Torres") submitted a number of pretrial motions to the court on March 25, 2006. The United States ("Government") responded on May 12, 2006. The parties presented oral argument on the motions on May 19, 2006. At that time, I reserved decision on all motions. For the reasons set forth below, the Defendant's motions are granted in part and denied in part.

**Background**

On June 30, 2004, custom officials in Miami, Florida found heroin inside a quilt that had been sent via courier service from Bogota, Colombia to 52-07 90th Street, Apartment 2A, Elmurst, New York ("90th Street Residence"). On July 6, 2004, Magistrate Judge Steven Gold signed an anticipatory search warrant authorizing a search of the 90th Street Residence in conjunction with a controlled delivery of the bag to that location.

On July 7, 2004, agents from the Immigration and Customs Enforcement section of the Department of Homeland Security ("ICE") attempted a controlled delivery of the package. The resident of the apartment (now a cooperating witness ("CW-1")) answered the door, but refused

1

to accept delivery of the package. Later that morning, an ICE special agent called the phone number on the package and arranged to re-deliver the package to the same location in approximately ten to fifteen minutes. The ICE agents made a second attempt to deliver the package, at which point CW-1 accepted the package. Shortly after the successful delivery of the package, a white Jeep Cherokee with North Carolina license plates parked behind an ICE surveillance van parked near the residence. A man, since identified as the Defendant, exited from the car and peered into the van before driving away.

Some time later, a livery cab arrived at the 90th Street Residence. CW-1 dropped the package to the cab driver from the second floor balcony. ICE agents detained both the driver and CW-1 and questioned each of them. CW-1 revealed that at some point between the first and second attempted deliveries by the agents, an unidentified man in a white jeep had driven to the 90th Street Residence and asked CW-1 to accept delivery of the package. Then CW-1's cousin called and told CW-1 to give the package to the cab driver. While CW-1 was speaking with the agents, CW-1's cousin told an ICE special agent over the phone that the Defendant had contacted him to ask if he could receive a package at the 90th Street Residence.

The agents began to search the vicinity for a white jeep. An ICE agent saw the Defendant's jeep driving westbound on nearby Queens Boulevard in a counter-surveillance manner.[1] The ICE agent stopped the Jeep and placed the Defendant under arrest.

---

[1] The Defendant was observed driving slowly, switching lanes for no apparent reason, and making an unexplained U-turn into the eastbound local lanes, after which he immediately merged into the express lanes. (Govt. Mem., at 7.)

**Analysis**

**1.     Suppression of fruits of arrest and searches**

Torres moves for the suppression of certain evidence, under the exclusionary rule, as improperly seized after a warrantless arrest without probable cause. (Torres Mot., at 4-5.) Torres specifically moves to exclude (1) his statements, allegedly made to Special Agents Klos & Pillot on the date of his arrest; (2) a handwritten document or note seized from the defendant while in custody; (3) photographs of Torres taken on the date of his arrest in 2004 and thereafter utilized for identification purposes, and (4) any identifications that took place. (Id., at 5.) The Government argues that there was probable cause to arrest Torres and therefore the exclusionary rule does not apply. (Gov't Mot., at 13-18.)

The exclusionary rule requires the suppression of evidence stemming from an arrest without probable cause, including evidence obtained as an indirect result of the arrest. See Wong Sun v. United States, 371 U.S. 471, 484-85 (1963). The exclusion applies to "tangible, physical material actually seized" as well as "items observed or words overheard" and "confessions or statements of the accused obtained during an illegal detention." United States v. Crews, 445 U.S. 463, 470 (1980); see also United States v. Fisher, 702 F.2d 372, 379 (2d Cir. 1983).

Where a police officer has probable cause to believe that someone has committed a felony in a public area, the officer may arrest that person immediately without a warrant. United States v. Watson, 423 U.S. 411, 418 (1976). If the officer lacks probable cause, however, the arrest is illegal and any obtained evidence is subject to the exclusionary rule. Probable cause "exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the

belief that (1) an offense has been or is being committed (2) by the person to be arrested." Fisher, 702 F.2d at 375.

Probable cause does not require a "prima facie showing of criminal activity" or a showing that it is more probable than not that a crime has occurred. United States v. Cruz, 834 F.2d 47, 50 (2d Cir. 1987). However, "it must constitute more than rumor, suspicion, or even a strong reason to suspect." Fisher, 702 F.2d at 375 (internal citation and quotations omitted). "In determining whether probable cause exists to believe that a particular person has committed a given crime, the Supreme Court has indicated that where the information possessed by the officers could have applied to any of a number of persons and did not reasonably single out from that group the person arrested, the arrest was not made with probable cause." Id. An officer's subjective intent in effectuating an arrest is irrelevant so long as probable cause to arrest exists. Arkansas v. Sullivan, 532 U.S. 769, 771-72 (2001).

In this case, Torres was arrested after the police had gathered the following information: between the two delivery attempts, an unidentified person had driven up to the apartment in a white jeep and asked CW-1 to accept delivery of a package; an unidentified person driving a white jeep with North Carolina plates had peeked into the surveillance van after the actual delivery and then drove off; CW-1's cousin called to tell the ICE agents that Heriberto Torres was the one who had asked him to accept delivery at the 90th Street address; and Torres was found nearby in a white jeep with North Carolina tags, driving in a "counter-surveillance" manner.

Together these factors support a showing of probable cause. Not only was Torres named by someone involved in the package delivery, but he was driving the type of car, with the same

out-of-state license plates, that had previously visited the scene, and he was driving the car in a suspicious manner. Furthermore, after his arrest, but before the evidence in question was seized, Torres was identified by a federal agent as the same person who had previously peeked into the surveillance van, adding further weight to the prior factors. Defendant's motion for suppression under the exclusionary rule is therefore denied as probable cause existed to arrest the defendant.

**2.     Dismissal of indictment for violation of speedy trial rules**

Torres seeks dismissal of the current indictment for improper prosecutorial delay and failure to comply with speedy indictment and trial rules. (Torres Mot., at 5-6.) Torres argues that the Government delayed re-indictment of Torres for a period of one year for tactical reasons. (Id.) Defendant further argues that he has been prejudiced as the time lapse has made it impossible for him to locate essential witnesses, and that during this period, the Government destroyed exculpatory evidence, or at a minimum allowed it to be destroyed. (Id.) The Government argues in response that its delay was neither intentional nor strategic. (Gov't Mem., at 21-22.)

When a suspect is arrested and charged in a complaint, pre-indictment delay is governed by the Speedy Trial Act of 1974, which sets a 30-day limit to file the indictment or information. See 18 U.S.C. § 3161(b). Dismissal of a complaint less than thirty days after arrest permits re-prosecution on that charge. See United States v. Hillegas, 578 F.2d 453 (2d Cir. 1978). Where, as here, the defendant is re-arrested and charged, the 30-day speedy indictment clock begins to run anew. See United States v. Sorrentino, 72 F.3d 294, 297 (2d Cir. 1995). Because the speedy indictment clock began to run anew upon Torres' second arrest, there is no question that his indictment was proper under 18 U.S.C. § 3161(b).

Torres maintains that the Government has exceeded the time allowance under speedy trial requirements when the nine days that Torres was detained under the first indictment is added to the twenty-two unexcluded days under the current indictment. (Tr. at 19-20.) The Government argues that only the twenty-two days should be counted, and that any potential error was waived when Torres' counsel consented to the exclusion of time following the twenty-two days. (Gov't Mem., at 22-23.)

Torres also brings a due process claim for pre-indictment delay given the one-year time period in between Torres' first and second arrest. To succeed with such a claim, a defendant must show that (1) the delay caused actual prejudice and (2) the prosecution intentionally caused the delay to obtain a tactical advantage. See United States v. Marion, 404 U.S. 307, 324 (1971); Denis v. Upstate Correctional Facility, 361 F.3d 759, 760 (2d Cir. 1990) (no due process violation despite "77-month delay in obtaining indictment").

In this case, Torres fails to show that the 12-month delay in his case reaches the level of a due process violation. Torres has not provided any facts supporting a claim that the prosecution intentionally caused the delay for tactical advantage. Although Torres argues that he is unable to locate essential witnesses, he has not provided documentation to support that argument. Furthermore, as no facts have been presented showing strategic prosecutorial motivations for delay, there is no reason to even consider whether the delay caused actual prejudice.

**3.     Suppression of identification testimony**

Torres moves in limine for the exclusion of any out-of-court identification or, in the alternative, a Wade hearing. See United States v. Wade, 388 U.S. 218 (1967). CW-1 identified the Defendant twice in a variety of procedures where he was shown a black and white

6

photograph of Torres. (Gov't Mem. at 11, 12.) However, prior to those two identifications, respectively, CW-1 apparently claimed not to recognize the Defendant in person (id. at 8) and to be unsure about a color photograph (id. at 12).

A specific determination must be made in each case as to whether the particular pretrial identification procedure employed was unnecessarily suggestive or prejudicial. In this Circuit, courts consider whether a pretrial identification was unduly suggestive using the following analysis:

> The first question is whether the pretrial identification procedures were unduly suggestive of the suspect's guilt. If they were not, the trial identification testimony is generally admissible without further inquiry into the reliability of the pretrial identification. In that circumstance, any question as to the reliability of the witness's identifications goes to the weight of the evidence, not its admissibility. If the pretrial procedures were unduly suggestive, the analysis requires a second step; the court must then weigh the suggestiveness of the pretrial process against factors suggesting that an in-court identification may be independently reliable rather than the product of the earlier suggestive procedures.

United States v. Maldonado-Rivera, 922 F.2d 934, 973 (2d Cir. 1990) (internal citations omitted).

The fact that the agents used a physical showup[2] of the defendant, as well as subsequent single photo identifications, is indicative of an unduly suggestive identification procedure. See, e.g., Dunnigan v. Keane, 137 F.3d 117, 129 (2d Cir. 1998). A showup may be permissible where there is "overriding necessity" for its use. United States v. Concepcion, 983 F.3d 369, 377 (2d Cir. 1992); see also Stovall v. Denno, 388 U.S. 293, 302 (1967). Whether there was overriding necessity in this case is unclear. However, it is clear that CW-1 was repeatedly asked

---

[2] After Defendant's arrest and while CW-1 was still being detained by the ICE agents, Torres was placed in front of CW-1's window and CW-1 was asked if he recognized the defendant. (Govt. Mem., at 8.)

to identify Torres, in person, in color photographs, and in black and white photographs. Such repetition could have easily suggested to the witness that the police wanted him to identify Torres.

"A request for a Wade hearing is generally granted where any question is raised concerning the suggestibility of the identification procedure." United States v. Persico, No. CR-92-00351, 1994 WL 36367, at *23 (E.D.N.Y. Jan. 28, 1984). I therefore grant Defendant's motion for a Wade hearing and hereby refer this matter to Magistrate Judge Cheryl L. Pollak for an evidentiary hearing on the out-of-court identifications the Government seeks to introduce. Judge Pollak is requested to issue a Report and Recommendation to the court on the admissibility of the identification following the hearing.

**4.     Bill of Particulars**

Torres moves for an order requiring the Government to provide a bill of particulars stating the identity of alleged co-conspirators. The Government argues that it is not required to do so.

Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars in order to enable him "to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987). The decision whether to order the filing of a bill of particulars is one which rests within the sound discretion of the district court. United States v. Barnes, 158 F.3d 662, 665 (2d Cir. 1998). A bill of particulars must be granted "only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999) (internal quotation marks and citation omitted). The Second Circuit has also instructed that a bill of

8

particulars should not be granted where the government has made sufficient disclosures concerning its evidence and witnesses by other means. Id. However, a bill of particulars may be appropriately granted where the government's pretrial discovery disclosures are so voluminous that the defendant remains uninformed about the specific acts of which he is accused. Bortnovsky, 820 F.2d at 575.

In this case, the indictment provides sufficient evidence of the crimes alleged to have been committed. The Defendant is aware of what he is being charged with, when the alleged crime took place, and the circumstances around that crime. The Government is not obligated to list co-conspirators at this time. I therefore deny the Defendants' motion for a bill of particulars.

**5.     Dismissal of all conspiracy counts in the indictment**

Defendant moves for the dismissal of all conspiracy counts in the indictment because no co-conspirators have been described in any form. (Torres Mot., at 7.) Torres further argues that the Government will not attempt to prove any criminal act by any other persons acting in agreement with the Defendant. (Id.) The Government argues that the applicable statute does not require disclosure of the co-conspirators identities in order to prove a conspiracy.

"Coconspirators need not be identified in the indictment for a defendant to be convicted of conspiring with them." United States v. Dixon, 112 F.3d 506 (2d Cir. 1996). In United States v. Medina, 32 F.3d 40, 44 (2d Cir. 1994), the Second Circuit held that the Government is not required to identify a co-conspirator in the indictment, absent a requirement in the applicable statute. In this case none of the applicable statutes require such identification. See, e.g., United States v. LoRusso, 695 F.2d 45, 56 (2d Cir. 1982) (fact that defendant's associates were not identified was no impediment to his conviction of conspiring with them under 21 U.S.C. § 846);

9

United States v. Valencia, 100 Fed.Appx. 17 (2d Cir. 2004) (defendant could be convicted of conspiring to distribute cocaine even though identity of his coconspirator remained unknown. 21 U.S.C. §§ 812, 841(a)(1), (b)(1)(B)).

**6.      404(b) Motions for Pre-trial Notice and to Preclude Evidence of Other Acts**

Torres moves under Fed. R. Evid. 404(b) for notice of all other 404(b) evidence the Government seeks to introduce, including uncharged crimes and unrelated conspiracies. Fed. R. Evid. 404(b) provides that:

> Evidence of other crimes, wrongs, or acts . . . . may . . . be admissible . . . as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404(b). "[A] trial judge has broad discretion to admit 'other crimes' evidence, which ruling will not be overturned on appeal absent an abuse of discretion." United States v. Devillio, 983 F.2d 1185, 1194 (2d Cir. 1993).

"The purpose of the notice provision is to reduce surprise and promote early resolution of any challenge to admissibility of the proffered evidence." United States v. Giffen, 379 F. Supp. 2d 337, 345 (S.D.N.Y. 2004) (internal quotations and citations omitted). Rule 404(b) "does not define 'reasonable notice' but leaves that determination to the sound discretion of the Court." United States v. Nachamie, 91 F. Supp. 2d 565, 577 (S.D.N.Y. 2000). "It has been the practice of courts in this circuit to deem notice afforded more than ten working days before trial as 'reasonable' within the meaning of Rule 404(b)." United States v. Heredia, No. 02 Cr. 1246, 2003 U.S. Dist. LEXIS 11390, *27 (S.D.N.Y. July 3, 2003). A court may provide for a longer notice period, especially in the case of a complex trial, in which the 404(b) evidence is critical to

10

the action, and there exists no threat to the safety of prospective witnesses. United States v. Livoti, 8 F. Supp. 2d 246, 250 (S.D.N.Y. 1998).

I thus find that the Defendant's motion requesting disclosure of the acts the Government seeks to introduce under Rule 404(b) is premature. Moreover, as the Government has not yet made its 404(b) disclosures, Torres' preemptive motion to preclude Rule 404(b) evidence is premature, and is denied without prejudice pending the Government's 404(b) disclosures.

7. **Disclosure of Government's witness list**

Torres requests disclosure of the Government's witness list. The Government responds that it has no obligation to disclose its witness list pretrial.

Federal Rule of Criminal Procedure 16 ("Rule 16") does not require the Government to furnish the names and addresses of its witnesses, although "district courts have authority to compel pretrial disclosure of the identity of government witnesses." United States v. Cannone, 528 F.2d 296, 300 (2d Cir.1975). However, such disclosure is not required short of "a *specific* showing that disclosure was both material to the preparation of the defense and reasonable in light of the circumstances surrounding the case." United States v. Bejasa, 904 F.2d 137, 139-40 (2d Cir. 1990) (emphasis in original) (quotations and citation omitted). Torres has not made a specific showing such as would require the Government to disclose the identity of its witness at this point in time. I therefore deny his motion for pre-trial disclosure of the Government's witness list.

8. **Disclosure of discovery the Government claims is exempt or privileged**

Torres requests the immediate production of additional Rule 16 material or, in the alternative, information about what requested materials are exempted or otherwise outside the boundaries of Rule 16. (Torres Mot., at 8.) The Government offered no response to this motion.

11

Rule 16 imposes obligations on both the government and the defense to disclose certain information and evidence upon request of the other side. Rule 16 is intended to provide the defendant with "liberal discovery," although not "the entirety of the government's case against him." United States v. Percevault, 490 F.2d 126, 130 (2d Cir. 1974). Under Rule 16(c), the government's obligations to disclose applicable materials continues up through and during the trial. See United States v. Matthews, 20 F.3d 538, 550 (2d Cir. 1994).

Where the government has failed to comply with its discovery obligations, under Rule 16(d)(2) the court may order the government "to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just." Fed. R. Crim. P. 16(d)(2). Torres has not alleged, or put forth evidence of, the Government's nondisclosure of Rule 16 materials. The court trusts that the Government will continue to meet its obligations pursuant Rule 16. Therefore I deny Torres' motion without prejudice.

**9.     Disclosure of Brady Materials**

Defendant moves for prompt discovery of exculpatory evidence as required by Brady and informs the court that the Government has not yet disclosed any Brady material. The Government responds that it is not aware of any Brady material but will disclose exculpatory information of which it becomes aware.

The Government is required to disclose any material exculpatory information in its possession. United States v. Brady, 373 U.S. 83 (1963). This is not an unlimited requirement. See United States v. Coppa, 267 F.3d 132, 142 (2d Cir. 2001) ("the prosecutor must disclose 'material' . . . exculpatory and impeachment information no later than the point at which a

12

reasonable probability will exist that the outcome would have been different if an earlier disclosure had been made. . . . Thus, we have never interpreted due process of law as requiring more than that Brady material must be disclosed in time for its effective use at trial.") (internal citations omitted); Leka v. Portuondo, 257 F.3d 89, 100 (2d Cir. 2001) ("It is not feasible or desirable to specify the extent or timing of [the] disclosure Brady and its progeny require, except in terms of the sufficiency, under the circumstances, of the defense's opportunity to use the evidence when disclosure is made.")

      The court assumes that the Government will disclose information in compliance with its obligations under Brady and its representations to the court, and does not believe an order is necessary for further compliance. Nonetheless, I use this opportunity to remind the Government that any failure to meet its obligations will have serious consequences, particularly once a trial date is set. Torres' motion is denied without prejudice.

**Conclusion**

For the reasons set forth above, the court DENIES the suppression of the fruits of Torres' warrantless arrest, DENIES the motion to dismiss the indictment under speedy trial rules or for denial of due process, GRANTS Defendant's motion for a <u>Wade</u> hearing and hereby REFERS this matter to Magistrate Judge Cheryl L. Pollak for an evidentiary hearing and Report and Recommendation, DENIES the motion for a bill of particulars stating the identity of alleged co-conspirators, DENIES the motion to dismiss all conspiracy counts in the indictment, DENIES without prejudice the motion for disclosure and preclusion of 404(b) evidence, DENIES the motion for disclosure of witness identities, DENIES without prejudice the motion for further Rule 16 discovery, and DENIES without prejudice the motion for <u>Brady</u> material.

SO ORDERED.

_____/s/_____
Dated: July 14, 2006            Nicholas G. Garaufis
Brooklyn, N.Y.                  United States District Judge